# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG D. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 4978 |
| | ) | |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| WEXFORD HEALTH SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Craig D. Rice ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Wexford Health Services, Inc., ("Wexford"), Eric Mizuno, ("Mizuno"), Thomas Hassen, ("Hassen"), Patricia Quick, ("Quick"), Theodore Uchiek, ("Uchiek"), and Mark Curran ("Curran"). Presently before us are two motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); Defendant Wexford's motion to dismiss, (Dkt. No. 58), and Defendants Quick, Uchiek, and Curran's motion to dismiss (Dkt. No. 55). For the reasons stated below, Defendant Wexford's motion is granted and Defendants Quick, Uchiek and Curran's motion is denied.

## BACKGROUND

Plaintiff's claims stem from allegedly inadequate medical treatment he received while in custody at the Lake County Sheriff's Office Adult Correctional Facility ("Lake County Jail") in Waukegan, Illinois. (Compl. ¶1.) In his complaint, Plaintiff alleges that he "suffers from blood clots in his lungs, a serious condition that requires ongoing monitoring and treatment." (*Id.*) He

further alleges that a large blood clot "can cause cardiac arrest, stroke, and death" while a "smaller clot can cause damage to the lung tissue." (*Id*. ¶ 11.)

On May 5, 2014, Plaintiff was transferred from Vista Medical Center East ("Vista") in Waukegan, Illinois to the medical unit at the Lake County Jail.[1] (*Id*. ¶ 14.) Plaintiff was transferred to Vista the day before for shortness of breath and a pulmonary embolism (a blockage of an artery in the lung). (*Id*. ¶¶ 11, 14) At Vista, Plaintiff was prescribed a blood-thinner, warfarin, (the generic version of the brand-name drug Coumadin), and twice-daily injections of Lovenox. (*Id*. ¶¶ 12, 15.) Plaintiff alleges that representatives of Vista contacted medical personnel at the Jail to confirm that his medical treatment would continue upon his transfer. (*Id*.)

After arriving at the jail around May 5, Dr. Mizuno, a jail physician employed by Wexford, ordered that Plaintiff receive twice-daily Lovenox injections for a week. (*Id*. ¶ 16.) Later that week, blood tests revealed that Plaintiff's international normalized ratio ("INR"), a test to evaluate a patient's blood clotting qualities, was below the desired range, possibly indicating a need for adjusted prescription levels. (*Id*. ¶¶ 13, 17.) On May 11, 2014, six days after Dr. Mizuno ordered a weekly, twice-daily dose of Lovenox, Plaintiff's second dose was not administered. (*Id*. ¶ 17.) Soon thereafter, Plaintiff experienced chest pain and severe shortness of breath and reported his symptoms to the medical staff. (*Id*. ¶ 18.) In response to his complaints, the staff informed Plaintiff: "this is not the hospital, this is jail." (*Id*.)

On May 12, 2014, Plaintiff's Lovenox injections were discontinued all together and he was transferred from the medical unit to general population. (*Id*. ¶ 18.) While in general population, Plaintiff continued to experience shortness of breath, stiffness and pain in his legs and general weakness. (*Id*.) Around May 16, Plaintiff's INR remained well below the desired

---

[1] At Lake County Jail, medical services are provided by a private company, Defendant Wexford, under contract with Lake County, Illinois. (Compl. ¶ 5.)

range.  (*Id*. ¶ 19.)  Two days later, on May 18, Dr. Mizuno ordered that Plaintiff's Lovenox injections be resumed for another week (May 18–May 24).  (*Id*. ¶ 24.)  Even with the Lovenox injections, Plaintiff's chest pain continued.  (*Id*. ¶ 20.)  Because of his ongoing chest pain, Plaintiff requested an emergency appointment with Dr. Mizuno but Dr. Mizuno refused to see him.  (*Id*.)

On May 21, 2014, Plaintiff was informed by medical staff that his Lovenox was missing from the medical cart.  (*Id*. ¶ 22.)  Medical records indicate that he did not receive either of his Lovenox injections that day.  (*Id*.)  On May 22, Plaintiff's INR was again below the desired range.  (*Id.* ¶ 23.)  Plaintiff did not receive either of his Lovenox injections on the 22nd.  (*Id*.)  Plaintiff alleges that from May 21 through May 31, Plaintiff's prescribed, twice-daily injections were frequently not administered and were soon discontinued.  (*Id*. ¶ 21.)

On May 24, 2014, Dr. Mizuno prescribed an additional two weeks of twice-daily Lovenox injections.  (*Id*. ¶ 24.)  Plaintiff did not receive his second injection on May 27, 28, 29 or 30.  (*Id*.)

On June 2, after yet another atypical INR result, Dr. Mizuno prescribed additional Lovenox injections to be administered twice-daily through June 15.  (*Id*. ¶ 25.)  Plaintiff did not receive a single injection from June 4 through June 10.  On June 4, Plaintiff requested a second emergency appointment with Dr. Mizuno due to increasing pain and pressure in the back of his head.  (*Id*. ¶ 26.)  Dr. Mizuno refused to see Plaintiff, again.  (*Id*.)  Dr. Mizuno did see Plaintiff on June 9, 2014.  (*Id*. ¶ 27.)  During that appointment, Dr. Mizuno informed Plaintiff that each Lovenox injection was $100 and, "that's a lot of money."  (*Id*.)  The next day, on June 10, Dr. Mizuno ordered that Plaintiff receive another week of injections.  (*Id*. ¶ 28.)  The next day, Plaintiff's INR was normal so the injections were discontinued.  (*Id*.)

On June 22, Plaintiff experienced painful bruising in his leg, a possible sign of deep vein thrombosis, the formation of a blood clot. (*Id*. ¶ 29.) In response to the bruising, Plaintiff requested an appointment with Dr. Mizuno. (*Id*. ¶ 29.) Dr. Mizuno refused to see Plaintiff, for the third time. (*Id*.)

Plaintiff filed at least five grievances alerting prison staff of his health condition and his inadequate care. (*Id*. ¶ 30.) In response to these grievances, Plaintiff was told that his grievances were being "forwarded to medical" for a response. (*Id*.) In his complaint, Plaintiff alleges that it was Defendant Patricia Quick, a Lake County Jail correctional officer, who (for at least four of the five grievances), informed Plaintiff that the complaint was being forwarded to medical. (*Id*. ¶ 30.) Despite filing at least five grievances, Plaintiff received just one response from medical. (*Id*.) In that response, Defendant Hassan, Wexford's Acting Health Services Administrator, concluded on July 2, 2014 that Plaintiff's grievance was unfounded because Plaintiff was "seen by a [d]octor on 6/9/14." (*Id*. ¶ 31)

Plaintiff alleges that at least one grievance, a grievance filed on May 31, 2014, was forwarded to Lake County Jail "command," and thus, was seen by Defendant Sheriff. (*Id*.) In early June 2014, Defendant Uchiek, Deputy Director of Corrections of Lake County Jail, visited Plaintiff in his cell concerning the May 31 grievance, allegedly on behalf of Defendant Sheriff Curran. (*Id*. ¶¶ 9, 31.) Defendant Uchiek asked Plaintiff for his copy of the grievance, and when Plaintiff declined, Defendant Uchiek responded: "you must not want the Sheriff's help." (*Id*. ¶ 31.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to "test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi.*,

910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted).  In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Thompson v. Ill. Dep't. of Prof'l. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).  Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must include a short and plain statement of the claim, showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Accordingly, a court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). Although a facially plausible claim need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). These requirements ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (2007)).

## ANALYSIS

Plaintiff brings three claims: (1) deliberate indifference to a serious medical condition, against individual Defendants Mizuno, Hassan, Quick, Uchiek and Curran ("individual Defendants"); (2) *respondeat superior*, directed against corporate Defendant Wexford; and (3) intentional infliction of emotional distress ("IIED") brought against the individual Defendants. For the purposes of this motion, we consider Counts I and III only as to Defendants Quick, Uchiek and Curran. We discuss each claim in turn, below.

### I. Deliberate Indifference to a Serious Medical Condition

Plaintiff alleges that Defendants Quick, Ucheik and Curran, non-medical Defendants, were deliberately indifferent to his serious medical need. (Compl. ¶ 38.) Plaintiff alleges that Defendants knew of a substantial risk of harm to Plaintiff's health yet consciously disregarded that known risk by failing to take affirmative steps to ensure that Plaintiff received proper medical care. (Compl. ¶¶ 37–38.)

The Fourteenth Amendment provides a pretrial detainee with a cause of action for deliberate indifference to his medical needs. *Heard v. Sheahan*, 148 Fed. Appx. 539, 540 (7th Cir. 2005) ("The Fourteenth Amendment, not the Eighth, protects a pre-trial detainee from denial of adequate medical care, but our analysis is practically identical to the Eighth Amendment standard of deliberate indifference."); *Hall v. Ryan*, 957 F.2d 402, 405 (7th Cir. 1992). "A finding of deliberate indifference requires a showing that the Sheriff was aware of a substantial risk of serious injury to Plaintiff but nevertheless failed to take appropriate steps to protect him from a known danger.*"* *Frake v. City of Chi.*, 210 F.3d 779, 782 (7th Cir. 2000); *accord Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014).

To prevail on a deliberate indifference to a medical need claim, Plaintiff must satisfy both an objective and subjective element. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Plaintiff must show that: "(1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

   a. **Objectively Serious Medical Need**

An objectively serious medical injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King*, 680 F.3d at 1018 (citing *Zentmyer v. Kendall Cty.*, 220 F.3d 805, 810 (7th Cir. 2000)); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). A condition is serious if "the failure to treat a [detainee's] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Dunigan ex. rel. Nyman v. Winnebago Cty.*, 165 F.3d 587, 590–91 (7th Cir. 1999) (internal citations omitted). The Seventh Circuit has recognized a broad range of medical conditions that qualify as a serious medical condition for deliberate indifference claims. *See King*, 680 F.3d at 1018 (explaining that "[m]edical conditions much less serious than seizures have satisfied the standard"); *Roe v. Elyea*, 631 F.3d 843, 861–62 (7th Cir. 2011) (noting that "a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit"); *see also Donnal v. Perez*, 15 CV 1550, 2015 WL 7738061, at *3 (N.D. Ohio Nov. 30, 2015) ("Plaintiff suffered a heart attack from two pulmonary embolisms. This qualifies as a serious medical condition."); *Deavers v. Rappahannock Reg. Jail Auth.*, 13 C 821, 2014 WL 3045445, at *6 (E.D. Va. July 3, 2014) (holding that plaintiff

plausibly alleged that as a survivor of a pulmonary embolism, she had a serious medical condition); *Scott v. Clarke*, 12 C 00036, 2012 WL 6151967, at *2 (W.D. Va. Dec. 11, 2012) (finding that plaintiffs met their burden to allege "objectively serious" medical needs where plaintiffs alleged a variety of medical problems, including a pulmonary embolism).

Defendants' motion to dismiss raises no challenges to the seriousness of Plaintiff's medical needs. Plaintiff alleges that he suffers from a pulmonary embolism, which is a blockage of an artery in his lung. (Compl. ¶ 11.) He further alleges that he has two blood clots in his lungs, a chronic and life-threatening condition. (*Id*.) If his condition is left untreated, a large blood clot in his lung can cause cardiac arrest, stroke and death; a smaller clot can cause damage to the lung tissue. (*Id*.) His complaint states that his symptoms include difficulty breathing, shortness of breath and rapid breathing, chest pain, sweating, anxiety, and heart palpitations. (*Id*.) Finally, Plaintiff contends that his condition was being treated by a physician prior to his incarceration and requires regular monitoring and treatment. (*Id*. ¶¶ 12–14.) Based on these allegations, Plaintiff has sufficiently alleged an "objectively serious medical condition."

### b. **Defendants Subjectively Knew of Risk and Failed to take Reasonable Measures to Prevent it**

As to the subjective prong, to survive a motion to dismiss, Plaintiff must show that Defendants were subjectively aware of the risk to Plaintiff and failed to take appropriate measures to mitigate the risk. *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S. Ct. 1970, 1974 (1994); *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (citing *Chapman*, 241 F.3d at 845). The subjective element "requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of

criminal recklessness." *Id.* (citing *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)).

This motion concerns the liability of non-medical Defendants Quick, Uchiek and Curran, only. "Deliberate indifference claims against a medical profession and a lay person are evaluated differently." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Generally, non-medical prison officials are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 990 (7th Cir. 2009). However, non-medical "prison officials may be found to be deliberately indifferent to a prisoner's serious medical needs if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a patient.'" *Flourney v. Ghosh*, 881 F. Supp. 2d 980, 990 (N.D. Ill. 2012). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks*, 555 F.3d at 594; *see also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2014) (denying motion to dismiss where plaintiff alleged that each defendant had actual knowledge of plaintiff's medical condition through plaintiff's detailed grievances, and plaintiff also alleged that each defendant "failed to exercise his or her authority to intervene on [plaintiff's] behalf" or "approved of or turned a blind eye to his allegedly unconstitutional treatment"); *Green v. Kaupas,* 13 C 50215, 2014 WL 3725855, at *5 (N.D. Ill. July 28, 2014) (holding that plaintiff's letter to Sheriff complaining about adequacy of care, "supports an inference that Sheriff Kaupas knew that [plaintiff] claimed that medical personnel had mistreated him or failed to provide necessary follow-up care"); *Boyce v. Johnson*, 13 C 6832, 2014 WL 3558762, at *3 (N.D. Ill. July 17, 2014) (denying defendants' motion to dismiss where plaintiff alleged he wrote a letter to non-medical defendants describing his

inadequate treatment; plaintiff sufficiently plead that defendants had knowledge that medical personnel failed to treat plaintiff ).

Here, Plaintiff alleges that all three non-medical Defendants had personal knowledge of Plaintiff's inadequate treatment. In his complaint, Plaintiff alleges that he filed at least five grievances "alerting prison personnel of his serious medical condition and the lack of necessary care for it." (Compl. ¶ 30.) Plaintiff further alleges that Defendant Quick personally responded to all but one of his grievances, that Defendant Uchiek came to Plaintiff's cell and discussed a grievance with Plaintiff "on behalf of Sheriff Curran," and that at least one grievance was forwarded to command, alerting the Sheriff of his problem. (*Id*. ¶¶ 30–31, 33.) At this stage, Plaintiff's grievances, allegedly read by Defendants Quick, Uchiek, and Curran, "support[] an inference that [Defendants] knew that [Plaintiff] claimed that medical personnel had mistreated him or failed to provide necessary follow-up care." *Green*, 2014 WL 3725855, at *6.

Additionally, Plaintiff alleges that all three non-medical Defendants failed to act after learning of Plaintiff's inadequate medical care. Plaintiff alleges that "in response to several grievances, Defendant Quick simply advised [Plaintiff] that [the grievances] had been forwarded to 'medical' for a response." (Compl. ¶ 33.) He further alleges that Defendants Uchiek and Curran failed to take action after learning of Plaintiff's inadequate treatment. (*Id*.)

Plaintiff sufficiently alleges that all three Defendants acted with deliberate indifference to his serious medical needs. Later, the evidence may reveal that Defendants acted reasonably in response to Plaintiff's grievances. For now, however, Plaintiff plausibly alleges a constitutional violation that defeats this dismissal. Defendants' motion to dismiss Count I is denied.[2]

---

[2] Defendants contend that even if we find that Plaintiff states a claim for deliberate indifference, Defendants are entitled to qualified immunity. (Mem. at 7.) We disagree. Qualified immunity protects state officials from civil liability "so long as their conduct does not violate clearly

## II. Count II: Respondeat Superior

Plaintiff brings his second claim against Defendant Wexford alleging that Defendant Wexford is liable for the acts of its employees. As Plaintiff acknowledges in his complaint, "the United States Court of Appeals for the Seventh Circuit does not now permit a claim of respondeat superior against a private corporation based on its employees' misconduct."[3] (*Id*. ¶ 42.) We agree. *See Burks,* 555 F.3d at 594–94 ("Section 1983 does not establish a system of vicarious liability.") (citing *Monell v. New York City Dep't of Soc. Serv*., 436 U.S. 658, 659, 98 S. Ct. 2018, 2019 (1978)); *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (declaring that under § 1983, there is no respondeat superior liability). Defendant Wexford's motion to dismiss Count II is granted.

## III. Count III: Intentional Infliction of Emotional Distress under Illinois Law

Finally, Plaintiff brings a state law intentional infliction of emotional distress claim ("IIED") against the individual Defendants. Like for Count I, for purposes of this motion, we consider liability as to Defendants Quick, Uchiek and Curran, only.

Under Illinois law, to support a claim for IIED, a plaintiff must allege: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852,

---

established . . . constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "Because a qualified immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate." *Bond v. Aguinaldo*, 265 F. Supp. 2d 926, 930 (N.D. Ill. 2003) (rejecting a qualified immunity defense on a deliberate indifference to serious medical needs claim because plaintiff sufficiently alleged a claim for deliberate indifference; an allegation of conduct that violated a clearly established right).

[3] Plaintiff additionally states that he brings Count II "in order to preserve a possible appeal of this issue to the Seventh Circuit." (Compl. ¶ 42.) We do not address whether Plaintiff has sufficiently preserved this issue for appeal.

864 (7th Cir.2010) (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 607 N.E.2d 201, 211 (1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El*, 602 F.3d at 864 (quoting *Kolegas*, 154 Ill.2d at 21, 607 N.E.2d at 211). In determining whether defendants' conduct reaches the "extreme and outrageous level," courts consider: 1) "the . . . power or control the defendant has over the plaintiff;" (2) "whether the defendant reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806, 811 (1998)).

As discussed in detail above, Plaintiff has sufficiently alleged a complaint for deliberate indifference to his serious medical needs. The allegations supporting his deliberate indifference claim are sufficient to support his IIED claim, as well.[4] *See Awalt*, 74 F. Supp. 3d at 942

---

[4] Defendants allege that the "extreme and outrageous" standard is higher than that for a deliberate indifference claim. (Resp. at 9.) Based on a review of the case law, we disagree. Defendants cite one case in support of this contention, *Moore v. Abernathy*, No. 11 C 3487, 2015 WL 222685, at *5 (N.D. Ill. Jan. 15, 2015) ("The standard for a deliberate indifference claim sets a lower bar than the 'extreme and outrageous' standard for IIED claims."). In *Moore*, the court relied on two cases; *Wells v. Bureau Cty.*, 723 F. Supp. 2d 1061, 1088–89 (N.D. Ill. 2010), and *Hardy v. Hardy*, No. 10 C 5921, 2013 WL 5325077, at *3 (N.D. Ill. Sept. 20, 2013). Neither *Hardy* nor *Wells* supports the contention that the deliberate indifference bar is lower than the "extreme and outrageous" standard. Instead, in both *Wells* and *Hardy*, the court found that because plaintiff failed to present a factual question as to his claim for deliberate indifference, his IIED claim failed, as well. *See Wells*, 723 F. Supp. 2d at 1088–89 ("Under the facts of this case, the Court concludes that Plaintiff['s] failure to establish an adequate factual basis to support a finding of deliberate indifference or willful and wanton conduct on [his] § 1983 claim necessarily precludes [him] from making an adequate showing of extreme and outrageous conduct or that any individual defendant intentionally or recklessly caused severe emotional distress as a matter of law. Defendants are therefore entitled to summary judgment on the IIED claim."); *Hardy*, 2013 WL 5325077, at *3 ("Accordingly, because Wexford was entitled to

(finding that evidence creating an issue of fact on plaintiff's deliberate indifference claim also supports denial of motion for summary judgment on IIED claim); *White*, 627 F. Supp. 2d at 921 (holding that plaintiffs' allegations of deliberate indifference to pleas for protection were sufficient to support a claim for IIED under federal notice pleadings); *Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, 2005 WL 910732, at *5 (denying defendants' motion to dismiss where plaintiff alleged that defendants were informed of abuse yet engaged in a policy of deliberate indifference); *Landon ex rel. Munici*, 2001 WL 649560, at *6 ("[P]laintiff has established that questions of material fact exist whether defendant's response constituted deliberate indifference. Accordingly, . . . plaintiff's IIED claim survives summary judgment."). Based on his allegations, we find that Plaintiff has sufficiently plead that Defendants knew Plaintiff was not receiving adequate medical care, yet failed to take action. Plaintiff additionally alleges that this conduct had a high probability of causing extreme emotional distress, and did in fact, cause extreme emotional distress. (Compl. ¶¶ 44–45.) Accordingly, Plaintiff has set forth sufficient allegations to survive a motion to dismiss at this stage.

---

summary judgment on Hardy's deliberately indifference claim, it necessarily follows that Hardy's direct IIED claim against Wexford fails as well."). We find that *Moore*, *Wells*, and *Hardy* do not preclude a finding that if plaintiff sufficiently alleges deliberate indifference, those allegations can too support a claim for IIED. *See Awalt v. Marketti,* 74 F. Supp. 3d 909, 942 (N.D. Ill. 2014); *Doe ex. rel Doe. v White*, 627 F. Supp. 2d 905, 921 (C.D. Ill. 2009); *Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.,* No. 04 C 8250, 2005 WL 910732, at *5 (N.D. Ill. April 13, 2005); *Landon ex rel. Munici v. Oswego Unit Sch. Dist. #308,* No. 00 C 1803, 2001 WL 64956, at *6 (N.D. Ill. June 8, 2001).

## CONCLUSION

As set forth above, Defendant Wexford's motion to dismiss is granted, and Plaintiff's claims as to Defendant Wexford (Count II) are dismissed. Defendants Quick, Uchiek and Curran's motion is denied. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 29, 2016
　　　　Chicago, Illinois